UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL JOHN DERWINSKI,

        Plaintiff,                Case No. 2:16-cv-218

v.                                HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

On September 24, 2012, plaintiff filed an application for disability insurance benefits. (ECF No. 7, PageID.257-264). Plaintiff alleges that he became disabled on June 30, 2011, due to bipolar disorder, anxiety, and depression. (PageID.275, 279). Plaintiff's application was denied initially and plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). (PageID.214-215). ALJ Brent Bedwell held a hearing on May 20, 2015. (PageID.139-180). Plaintiff, represented by counsel, testified at the hearing. Also, plaintiff's father David Derwinski and vocational expert John Reiser testified at the hearing.

Plaintiff was born on March 8, 1989, and has a high school education. (PageID.144). Plaintiff lives with his mother, father, and brother. Plaintiff has a driver's license, but sometimes has difficulty determining where he is and where he needs to go. (PageID.145). During the summer of 2008, plaintiff bagged groceries at Econo Foods. He left that job when he obtained a position as a wireman, assembling panels for the electrical grid system. Plaintiff quit that job in August of 2009, because he was losing the ability to concentrate and complete the work.

(PageID.146). Plaintiff stated that he would like to apply for jobs, but he "can't get out of bed or off the couch," and he is dependent on his parents to drive him places. (PageID.147). Plaintiff explained that he had difficulty completing tasks, he freezes-up, gets confused, and almost gets paralyzed. (PageID.148). Plaintiff begins tasks but gets confused and fails to complete them. (PageID.153).

Plaintiff has taken Abilify and a thyroid medication in the past. Abilify helps plaintiff get out of bed, brush his teeth, and shower, but he still gets confused and tired. (PageID.149). Plaintiff gained 15 pounds while taking his medications. Plaintiff walks once or twice a week, but not too far because he gets disoriented. Plaintiff will go two or three blocks in a straight path and then back to his house. Plaintiff likes living at home and has no problems with his parents or brother. (PageID.149-150). Plaintiff spends the day at home, alone with the family dog. (PageID.150). Plaintiff spends most of his time watching television. (PageID.152). Plaintiff enjoys watching sports and following teams such as the Chicago Bears in football, and Notre Dame and Michigan State in basketball. (PageID.154-155).

Plaintiff is able to make a bowl of cereal for breakfast and usually eats leftovers for lunch. (PageID.151). Plaintiff can use a microwave to heat-up frozen foods and is able to complete basic hygiene such as showering, but needs reminders about brushing his teeth. (PageID.151-152). Plaintiff enjoys fishing and hunting, but indicated that he has not been able to do that recently because he loses focus. (PageID.154). Plaintiff explained that he would like to do more, but that he is engaging in less activities because he lacks the motivation. (PageID.156).

Plaintiff switched from an injectable medication, Invega, to an oral medication. Plaintiff initially had difficulty remembering to take his medication on a regular basis. (PageID.158). However, he began taking his medication regularly after he received a pillbox.

Plaintiff functions better with the oral medication because he is able to get out of bed, shower, and brush his teeth, which was harder to do when he was taking injectable Invega. (PageID.159).

Plaintiff has thought about applying for jobs, but he does not think that he would be able to perform the jobs that he wanted, because he just lays around, cannot concentrate, and gets disoriented. (PageID.160-161). Plaintiff's father testified that in his opinion, the medical records do not accurately reflect his son's functional abilities and underestimate the severity of his illness. (PageID.163). He believes that his son tells the medical professionals what they want to hear. (PageID.164). He testified that his son's severe illness causes the lack of motivation, and describes him as "mentally paralyzed." (PageID.169). Plaintiff's father expressed dissatisfaction with the opinions of the medical professionals as reflected in the records before the ALJ. (PageID.164, 166-167).

Vocational expert John Reiser testified that a hypothetical individual who can perform unskilled work at all exertional levels, limited to occasional decision making and work setting changes, who cannot perform fast paced production work, will be off task up to 10 percent of the workday, and can have no interaction with the public could perform work as a wire assembler, but due to public interaction would not be able to perform work as a grocery bagger. (PageID.175). In addition, that individual could perform work such as a store laborer (100,000 jobs nationally), hospital cleaner (30,000 jobs nationally), or housekeeping cleaner (500,000 jobs nationally). (PageID.175-176). If an individual is off task in excess of 10 percent per day, that person would not be employable in the national economy. (PageID.177).

The ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy given plaintiff's residual functional capacity (RFC) and, therefore, concluded that plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. §

404.1520(g)).  The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review.  Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits.

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).  The findings of the ALJ are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).  This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently.  *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520(a-f),

416.920(a-f); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's residual functional capacity, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines plaintiff is not disabled under any step, the analysis ceases and plaintiff is declared as such. 20 C.F.R § 404.1520(a). If the ALJ can make a dispositive finding at any point in the review, no further finding is required. 20 C.F.R. § 404.1520(a).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined that plaintiff had not engaged in substantial gainful activity since June 30, 2011, and has the severe impairments of affective/bipolar disorder and mood disorder. (PageID.128). The ALJ found that plaintiffs' impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20

C.F.R. part 404, Subpart P, Appendix 1. The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform unskilled work at all exertional levels with additional limitations of: occasional decision making and changes to work setting, allowance of being off task up to 10 percent of the day, occasional interaction with public, no fast past production work, and reminders of work tasks two times per week. (PageID.130). The ALJ determined that plaintiff could perform past relevant work as a wiring assembler. In addition, the ALJ found that plaintiff had the RFC to perform as a store laborer (100,000 jobs), hospital cleaner (30,000 jobs), and housekeeper/cleaner (500,000 jobs). This Court must affirm the ALJ's findings if sufficient evidence supports the ALJ's decision even if the evidence supports an alternative conclusion.

Plaintiff argues that the Appeals Council improperly refused to consider new and material evidence. In addition, Plaintiff argues that the ALJ erred by failing to properly evaluate the requirement of SSR 96-7, by failing to properly consider Listings 12.04, 12.03, and 12.08, by failing to consider all of plaintiff's severe and non-severe impairments in combination, by making factual findings that are inconsistent with the record and plaintiff's testimony concerning intensity, persistence, and the limiting effects of his symptoms, by failing to present a hypothetical question to the vocational expert that considered each of plaintiff's limitations, by failing to recognize that plaintiff would likely be absent from work more than four days per month, and by failing to elicit testimony showing that the vocational expert's testimony is inconsistent with the Dictionary of Occupational Titles as required by SSR 00-4p. Plaintiff argues that the ALJ's findings are not supported by substantial evidence.

Plaintiff began seeing psychiatrist Dr. Van Holla in December 2010, due to "concerns for nervous depression." (PageID.425). Plaintiff was diagnosed with major depressive disorder. By the middle of 2012, Dr. Van Holla began to diagnose plaintiff with symptoms of

6

schizophrenia, possibly in the prodromal phase due to showing early symptoms before the onset of the disease. (PageID.402, 404, 408). Plaintiff was hospitalized after he was not compliant with his medication and was behaving uncharacteristically. (PageID.428, 480). Plaintiff was initially diagnosed by Katie Lapine from Northpoint Community Mental Health, at Dickinson County Memorial Hospital, with schizoaffective disorder and antisocial personality disorder before his hospital admission. (PageID.431). Plaintiff's diagnosis upon discharge from the hospital was for bipolar disorder, manic, and hypothyroidism. (PageID.429).

Plaintiff continued his treatment at Northpointe. At an October 8, 2012, appointment, plaintiff was doing well. His weight was up 15 pounds to 230 pounds, but he indicated that was normal for him. (PageID.438). He indicated that he and his parents were pleased with his progress. Nurse Roell wrote that plaintiff had a history of "mild depression evolving into symptoms of bipolar disorder with possible psychosis over the last year currently resembling mania . . ." (PageID.439). He requested that his Zoloft medication be discontinued because it gave him too much energy. (PageID.438, 440).

At his December 18, 2012, appointment, plaintiff appeared calm and in a decent mood. (PageID.489). He reported that he was getting along with his parents fine and that he had earned a little money from shoveling snow. He did not want to go to school or look for a formal job, but would like to start a lawn maintenance and snow removal business. Case Manager Patrick Smith, LMSW, QMHP/QMRP wrote that "[h]e seems to be waiting to be accepted onto Social Security Disability as a way to earn a living for himself." *Id.* On January 9, 2013, plaintiff reported a decent stable mood. (PageID.486). He sleeps eight hours at night and naps during the day. He was getting out three times per day to walk and was doing work around the house. His father reported that "Dan was doing fine and they have been getting along better." *Id.* In a July 18, 2013,

assessment, it was reported that plaintiff stated that he did not anticipate that he would work while his social security application was pending. (PageID.551).

Plaintiff's medical records show that he continued to do well throughout 2014. (PageID.519-536). Nurse Roell reported on December 8, 2014, that plaintiff was doing well, making frequent eye contact, in a neutral to cheerful mood "there were no paranoid overtones and no preservation. He is no longer repetitious. Insight is clearly improved and along with judgment both seem generally intact. He was alert, fully oriented, and shows good insight into his diagnosis and need for medication." (PageID.516). Plaintiff's symptoms were in good control with medication. (PageID.517).

Plaintiff argues that the ALJ erred in concluding that plaintiff was not entirely credible. Plaintiff argues that the ALJ failed to credit Dr. Van Holla's assessment that plaintiff misrepresented his progress due to his mental health condition, that the ALJ made a "boilerplate credibility determination" without giving proper weight to plaintiff's statements, and that the ALJ overemphasized plaintiff's ability to engage in daily activities.

The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.) Nevertheless, the ALJ's assessment of a claimant's credibility "must be reasonable and supported by substantial evidence in the record." *Rogers*, 486 F.3d at 249. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

The Sixth Circuit applies a two-part test when evaluating a claimant's subjective complaints. First, the ALJ must determine whether "there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). Second, "if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (citing 20 C.F.R. § 416.929(a)). In making this determination, the ALJ should also consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, the claimant received to relieve the pain; (6) measures used by the claimant to relieve symptoms; and (7) other factors concerning your functional limitations. *Id.*; *see also* SSR 96-7p.[1] "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

In determining that plaintiff's allegations of disability were not entirely credible the ALJ explained plaintiff's ability to engage in activity:

> The claimant has alleged he has been unable to work since June 30, 2011 due to an affective/bipolar disorder, mood disorder. The claimant has reported he has trouble concentrating on tasks (Exhibit 4E). He has indicated he does not have any problems with bathing, grooming, or personal hygiene. He has stated he can make simple foods and assist with household chores including some cleaning, laundry, and yard work (Exhibit 3E and Testimony). He can drive a car. He has reported he shops for food. The claimant has reported he can manage his own finances. He has reported exercising, watching sports, hanging out with friends and family, and walking

---

[1] SSR 96-7p was rescinded on March 16, 2016, but was binding at the time of the ALJ's decision.

9

> the dog. He has indicated he gets along with his parents and brother, but had some issues in the past. He likes fishing, hunting, riding a wheeler and watching sports. He takes medication and stated it helps with symptoms so he can get up and out of bed in the morning. However, he stated he sometimes feels tired and lays on the couch during the day.
>
> The claimant's father completed a report indicating the claimant is convinced he cannot work because he has been diagnosed with bipolar disorder (Exhibit 5E). He has stated the claimant does not sleep when not on medication. He has indicated the claimant takes his medication by injection because he would not take it consistently otherwise. He has reported the claimant makes simple foods and helps with some household chores. The claimant's father indicated the claimant shops for food, but has been irresponsible with money. It was reported the claimant spends his free time watching television, riding his bicycle, attending football games, and going to the family camp.

(PageID.130-131).

> The ALJ further explained his determination regarding credibility:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The evidence does not support the claimant's allegations that he has been disabled since June 2011. Although the claimant was diagnosed with a mood disorder in December 2010, the treatment notes indicate his symptoms responded positively to medication. However, the claimant failed to take the medication as prescribed, which ultimately ended in a fairly severe episode of decompensation with involuntary hospitalization. The treatment records indicate the claimant responded well to medication and therapy and stabilized quickly. They also indicate the claimant has remained stable and done well since the hospitalization (Exhibits 3F, 5F, and 8F). The claimant's father testified that the claimant has not improved. However, the treatment notes indicate the parents agreed the claimant was doing well. For example, in August 2012, the parents agreed the claimant was doing much better and were pleased with his mood (Exhibit 3F). The October 2012 notes indicate the parents

were happy with the claimant's progress and his father thought the claimant had come a long way (Exhibit 3F). In January 2013, the claimant's father reported the claimant was doing fine and they had been getting along better (Exhibit 5F). In December 2014, the claimant's father indicated he did not have any concerns (Exhibit 8F).

While the claimant's affective/bipolar disorder/mood disorder undoubtedly imposes some limits on his ability to function, his reported interests and activities of daily living suggest that he maintains a capacity for functioning. The claimant reported a range of activities, as noted above (Exhibit 3E and Testimony), but sometimes just does not really want to do much. The claimant's father also reported a range of activities the claimant engaged in (Exhibit 5E), but testified the claimant sometime did very little.

As for opinion evidence, Dr. David Van Holla wrote a letter indicating he had treated the claimant from December 2010 to November 2011 (Exhibits lF and 7F). He stated the claimant suffered from a severe mental impairment characterized by unstable mood, anxiety, and psychosis. His mental impairment interfered with his academic, social, and occupational functioning. He stated the claimant's symptoms were consistent with either paranoid schizophrenia or bipolar disorder, type I with psychosis. He stated the claimant tells his doctors what they want to hear but is incapable of following through. Dr. Van Holla's opinion reflects how the claimant was functioning just before his hospitalization. However, it does not assess his functioning in the months and years following his hospitalization. Other records better reflect the claimant's care and how he was doing. As a result, Dr. Van Holla's opinion is given little weight.

Angela Bjome, LMSW, completed an assessment indicating the claimant had moderate limitations in self-care, and marked limitations in self-direction, activities of daily living, and leisure, recreation or learning (Exhibit lF). She found the claimant had no problems in interpersonal relationships. Ms. Bjorne had met with the claimant only once when she made this assessment. In addition, Ms. Bjome, as a LMSW, is not an "acceptable" medical source. Other treatment records and even the claimant's own reports of activities and functioning do not support Ms. Bjorne's opinions regarding limitations. As a result, her opinion is given little weight.

> Dr. Robert Newhouse, the state agency consultant, found the claimant had mild restriction of activities of daily living, moderate difficulties maintaining social functioning and maintaining concentration, persistence, and had suffered one or two episodes of decompensation of extended duration (Exhibit lA). Dr. Newhouse opined the claimant would function best in small groups and retains the ability to do simple tasks on a sustained basis. Dr. Newhouse's finding are supported by substantial evidence in the record including the treatment notes indicating that the claimant has benefitted from medication and counseling with progress and improvement noted repeatedly. With regard to the "B" criteria, the undersigned gives the claimant the benefit of the doubt in finding he has moderate restriction of activities of daily living. Even though the claimant reported a range of activities, as noted above, he needs some reminders with tasks. Dr. Newhouse's opinions are given significant weight.

(PageID.132-133). The ALJ's assessment of plaintiff's allegations of disabling symptoms was thorough and complete. The ALJ properly concluded that plaintiff's allegations were inconsistent with the medical evidence. *See, e.g.*, *Winslow*, 566 Fed. App'x at 422 (demonstrating that the ALJ found claimant's alleged functional limitations not credible because it largely conflicted with creditable objective medical evidence).

Plaintiff argues that the ALJ failed to properly evaluate SSR 96-7p's fourth factor, the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." In addition, plaintiff asserts that the medication he takes for hypothyroidism/Hashimoto's thyroiditis was not discussed, and that the ALJ failed to consider the effects of obesity on his RFC and ability to work. The ALJ noted that plaintiff had some difficulty with feeling tired. (PageID.130). The ALJ found that plaintiff responded well to his medication and the medical record supports this finding. Substantial evidence supports the ALJ's finding. The medical record shows that, at times, adjustments were made to plaintiff's medications, however, plaintiff tolerated his medication well without side effects, and the medication was effective in limiting symptoms. In late 2012, Plaintiff reported that he is tolerating

his medications well and feels that the medication Invega Sustenna was the right choice. (PageID.444, 491). As of January 9, 2013, plaintiff was taking Invega Sustenna which was managing "his mood disorder without making him sick or tired." (PageID.486). The medical records report similar results throughout 2013, 2014, and into 2015. Substantial evidence supports the ALJ's finding that plaintiff responded positively to his medication.

Contrary to plaintiff's assertion, there is no evidence in the record which supports a claim that the medication he was taking for hypothyroidism caused any adverse side effects or limitation on his RFC. In addition, nothing in the record supports the argument that plaintiff's obesity is a limiting factor in his ability to work. Accordingly, plaintiff has failed to show that the ALJ erred in assessing the effects of his mediation, or by not considering his obesity as limiting factors in his ability to sustain employment.

Plaintiff argues that the ALJ failed to properly evaluate Social Security Listing 12.04. The ALJ determined that the severity of plaintiff's mental impairment did not meet the 12.04 listing criteria. Ultimately, a claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). *See also*, *Thacker v. Soc. Sec. Admin.*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") If a

claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 416.920(d). In concluding that plaintiff could not meet the paragraph B or C criteria, the ALJ found that plaintiff had only moderate difficulties.

> In activities of daily living, the claimant has moderate restriction. The claimant reported a range of activities of daily living including attending to his bathing, grooming, and personal hygiene independently (Exhibit 4E). He testified he stays home while his parents are at work. He stated he can make simple things to eat, watches television and can help with household chores. He has a license and can drive. He helps care for the family dog. The claimant stated he likes to fish, hunt, ride a wheeler and watch sports, but really does not want to do much. He has a pillbox and takes medication.
>
> In social functioning, the claimant has moderate difficulties. He stated he gets along with his parents and brother, but has had difficulties with these relationships in the past. He testified that in the last year he thought he had less interaction with others.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported he had difficulties finishing tasks he starts. He stated he loses interest in tasks or gets confused and then does not complete them. He stated he is sometime forgetful, in terms of what he is to do or with what he has been told to do.
>
> As for episodes of decompensation, the claimant has experienced an episode of decompensation, each of extended duration. In July 2012, the claimant was hospitalized for ten days after experiencing a manic episode.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. While the claimant has a medically documented history of a chronic affective disorder of at least two years duration, as described in Section 12.04 of the listings,

> the claimant has not suffered from repeated episodes of decompensation. Nor has the claimant's condition resulted in a residual disease process that has led to such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate. The claimant has never lived in a highly supportive living arrangement and has never demonstrated an inability to function independently outside the area of the home.

(PageID.129).

In making this assessment, the ALJ could properly rely on the opinion of state agency consultant, Dr. Newhouse, who opined that plaintiff had mild restriction of activities of daily living and moderate social limitations. (PageID.186). "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. App'x 412, 415 (6th Cir. 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 n.4 (6th Cir. 2007) (quoting SSR 96-6P).

Plaintiff argues that the ALJ erred in phrasing the hypothetical question he gave to the vocational expert due to his failure to include every limitation supported by the medical evidence, including those of obesity and hypothyroidism. Plaintiff asserts that the work restrictions should have included being off task and missing work on a regular basis. Plaintiff has failed to show that his obesity and hypothyroidism restricted his ability to work any greater than the limitations set forth by the ALJ. The ALJ's question assumed that the hypothetical individual would be off task not greater than 10 percent of the day. (PageID.174). The vocational expert testified that if an individual was off task greater than 10 percent of the day, that individual was not employable. (PageID.177-178).

15

Plaintiff argues that the ALJ erred in determining that he could perform his past work as a wiring assembler. The vocational expert explained the job duties of a wireman assembler:

> The other job he described as a wireman assembler doing, working off of diagrams and wiring electrical panels, following two weeks of training. While he did say he sat most of the time the lifting of 30 pounds on occasion is going to put the work in the range in my opinion of light work to medium work. In the Dictionary wire worker is the title, it is considered to be light work and it is considered unskilled with an SVP of 2. So the way the job was done I guess we have to default to with the 30 pound lifting to medium, unskilled.

(PageID.173). Further, the vocational expert stated that the wireman assembler job is not particularly fast paced work and requires no public contact. (PageID.175). The ALJ found that plaintiff could perform the physical and mental demands of the wire assembly position based upon his RFC, and that the vocational expert testified that an individual of plaintiff's age, education, work experience, and RFC could perform the wiring assembly job. (PageID.134). Substantial evidence exists to support that finding.

Plaintiff argues that the ALJ erred by not properly inquiring whether the Dictionary of Occupational Titles conflicted with the vocational expert's testimony regarding the mental demands of the wire assembly position. Similarly, plaintiff argues that the vocational expert provided no information regarding decision making and changes in work setting required in the other jobs identified in response to the ALJ's hypotheticals. For instance, plaintiff argues that "Stores Laborer" likely requires frequent decision making. Plaintiff argues that he cannot perform the duties of "Hospital Cleaner" or "Housekeeping Cleaner," because his father testified that he had trouble folding just fifteen towels at home.

The ALJ has a duty under SSR 00-4p to ask the vocational expert whether the testimony conflicts with the information provided in the Dictionary of Occupational Titles. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 603 (6th Cir. 2009). The "ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry specified by SSR 00-4p." *Saunders v. Comm'r of Soc. Sec.*, 2010 WL 1132286 (W.D. Mich. 2010) (citing *Lindsley* 56- F.3d at 606). Rather, it is plaintiff's representative's duty to raise any conflicts in the vocational expert's testimony and the Dictionary of Occupational Titles. See *Saunders* and *Johnson* v. *Comm'r of Soc. Sec.*, 2013 WL 1703894 (W.D. Mich. 2013) (where counsel fails to bring to the ALJ's attention discrepancies or conflicts with the Dictionary of Occupational Titles, it is too late to seek relief in federal court on such a ground). In this case, the ALJ fulfilled his duty under SSR 00-4p when he asked the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles. (PageID.178). Plaintiff's representative did not make any further inquiries regarding the positions that the vocational expert testified plaintiff had the capacity to perform.

The Dictionary of Occupational Titles refers to the "collective description" of jobs and each description "refers to a grouping of numerous individual jobs with similar duties. *Lindsley,* 560 F.3d at 605. Plaintiff must show that he was unable to perform each of the jobs of the representative occupations. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Furthermore, even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have reasonably found that Martin could perform the third position as assembler."); *Joyce v. Comm'r of Soc. Sec*. 662 Fed. Appx. 430, 437 (6th Cir. 2016). Here, the vocational expert testified that the job positions did not involve frequent decision making or changes in work setting. (PageID.135-137). The ALJ could rely upon the vocational expert's

testimony. The ALJ's failure to inquire further regarding the exact job duties of these positions is not reversible error and does not require a remand.

Plaintiff argues that the Appeals Council failed to consider new and material evidence that impacts the ALJ's disability determination, and failed to consider whether the new medical information meets Listings 12.03 (Schizophrenia spectrum and other psychotic disorders) and 12.08 (Personality and impulse-control disorders). Plaintiff states that the new medical records contain a diagnosis of Schizoaffective Disorder – Bipolar-Type rather than Bipolar-I, and indicate that plaintiff would likely be absent from work for more than four days per month. Plaintiff argues that it was error for the Appeals Council to not consider this evidence. The Appeals Council stated that it looked at the evidence submitted from Northpointe Behavioral Health, dated June 4, 2015, to April 14, 2016. (PageID.39). It is first noted that this Court does not have jurisdiction to reverse the decision of the Appeals Council. *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Remand to the Commissioner is the only remedy available to this court when new material evidence would likely change the outcome of this case.

Pursuant to 42 U.S.C. § 405(g), sentence six states in relevant part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

These requirements are fully explained in *Foster v. Halter*:

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L.E.2d 563 (1990). Such evidence is "material" only if there is "a reasonable

> probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit has used a strict test for the "good cause" requirement in that "[t]he claimant must give a valid reason for failing to obtain relevant examinations prior to the hearing." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

Plaintiff presented these records to the Appeals Council. Evidence is "material" for a sentence six remand only if the Commissioner reasonably could have decided the disability claim differently with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The Appeals Council considered those records when denying review. The medical records (PageID.625-668) show that plaintiff continues to do well, but "still has difficulties with lack of motivation and ambition, and has trouble moving forward." (PageID.625). Plaintiff's most recent medical records are consistent with plaintiff's past medical records. The particular diagnosis of schizoaffective disorder was made by nurse Roell. The Commissioner points out that only acceptable medical sources are qualified to diagnose an impairment. Nurse practitioners are considered "other [non-medical] sources" under 20 C.F.R. § 404.1513. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. App'x 392, 397-98 (6th Cir. 2014) (stating "other sources" can include nurse practitioners, physician assistants, and therapists, among other medical sources). While opinions from "other sources" cannot "establish the *existence* of a disability, their perspective should be given weight by the adjudicator and should be 'evaluated on key issues such as *impairment severity* and *functional effects*, along with other evidence in the file.'" *Engebrecht*, 572 Fed. App'x at 398

(quoting *Cruse*, 502 F.3d at 541) (emphasis added).  Ultimately, plaintiff must show that the new medical evidence would cause the Commissioner to decide the case differently.  In this case, the records failed to cause the Commissioner to decide the claim differently.  Remand is not appropriate in this case.  Most importantly, there is substantial evidence in the record that supports the Commissioner's decision that plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

/s/ Paul L. Maloney
PAUL L. MALONEY
UNITED STATES DISTRICT JUDGE

Dated:  March 22, 2018